## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

JUSTIN BOWMAN,

     Plaintiff,

Case: 25-cv-

Hon.

Vs.

MICHIGAN STATE UNIVERSITY,
THE BOARD OF TRUSTEES OF MICHIGAN
STATE UNIVERSITY,
PRESIDENT TERESA WOODRUFF,
VICE PRESIDENT MARLON LYNCH,
MICHIGAN STATE UNIVERSITY POLICE
AND PUBLIC SAFETY,
CHIEF JOHN PRUSH,
MICHIGAN STATE UNIVERSITY
INFRASTRUCTURE PLANNING AND
FACILITIES, and
DAN BOLLMAN,

In their Individual Capacity,

     Defendants.

## PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

**NOW COMES** Plaintiff, JUSTIN BOWMAN, by and through his attorneys,

CHRISTENSEN LAW and for Plaintiff's Complaint and Demand for Jury Trial

against the above-named Defendants, state as follows:

## INTRODUCTION

On February 13, 2023, horrific events took place at Michigan State University

which resulted in death, serious personal injuries, and severe psychological injuries

1

to Plaintiff and others. The horror of February 13, 2023, was entirely preventable. Each and every Defendant named herein created and increased the dangers then-existing at Michigan State University.  Each and every Defendant named herein committed conduct amounting to gross negligence, causing serious and permanent physical and emotional trauma to Plaintiff and others.

The individually named Defendants are each responsible through their actions for enacting policies and procedures that increased the risk to the staff and students, causing the students to be in direct harm, and acting in a manner that was so reckless as to demonstrate a substantial lack of concern for whether an injury results. The acts committed by the Defendants completely shocks the conscious.  The students at Michigan State University, and Plaintiff in particular, would have been safer had the Defendants not taken the actions that they did. Their actions allowed a gunman unfettered access to the instructional buildings and classrooms on February 13, 2023.

## **JURISDICTION AND VENUE**

1.      This action arises under the United States Constitution and under the laws of the United States Constitution, particularly under the provisions of the Fourteenth Amendment to the United States Constitution and under the laws of the United States, particularly the Civil Rights Act, Title 42 of the United States Code, Sections 1983 and 1988, and under the statutes and common law of the State of Michigan.

2

2.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 (a)(3), 1343(a)(4) and 42 U.S.C § 1983.

3.     This Court has supplemental jurisdiction of the Michigan law state claims which arise out of the nucleus of operative facts common to Plaintiff's federal claims pursuant to 28 U.S.C. § 1367.

4.     The actions alleged in this Complaint took place within Ingham County, State of Michigan, and as such, jurisdiction lies in the United States District Court for the Western District of Michigan.

5.     Venue is proper pursuant to 28 U.S.C. §1391(d).

6.     The amount in controversy exceeds Fifty Million ($50,000,000) dollars, excluding interests, costs, and attorneys' fees.

## **PARTIES**

7.     Plaintiff hereby reincorporates and reasserts each and every allegation set forth in the previous paragraphs of this Complaint as if fully set forth herein.

8.     At all times relevant hereto, Plaintiff, JUSTIN BOWMAN was a resident of the City of East Lansing, County of Ingham, State of Michigan.

9.     At all times relevant hereto, Plaintiff, JUSTIN BOWMAN was a college student at Michigan State University who was living on campus. He was motivated, hardworking, and looking forward to graduation and his life ahead of him.

10.    At all times relevant hereto, Defendant, MICHIGAN STATE UNIVERSITY, was and continues to be a public university organized and existing under the laws of the State of Michigan.

11.    Defendant, THE BOARD OF TRUSTEES OF MICHIGAN STATE UNIVERSITY is the governing body for Michigan State University.

12.    Defendant, MICHIGAN STATE UNIVERSITY and Defendant, THE BOARD OF TRUSTEES OF MICHIGAN STATE UNIVERSITY are hereinafter collectively referred to as "MICHIGAN STATE UNIVERSITY."

13.    Upon information and belief, at all times relevant hereto, Defendant, TERESA WOODRUFF, (hereinafter referred to as "WOODRUFF") is a citizen of the State of Michigan and was acting under the color of state law within the course and scope of her employment as President of the MICHIGAN STATE UNIVERSITY.

14.    Upon information and belief, at all times relevant hereto, Defendant, MARLON LYNCH, (hereinafter referred to as "LYNCH") is a citizen of the State of Michigan and was acting under the color of state law within the course and scope of his employment as Vice President of the MICHIGAN STATE UNIVERSITY.

15.    At all times relevant hereto, Defendant, MICHIGAN STATE UNIVERSITY POLICE AND PUBLIC SAFETY, was and is a municipal corporation, duly organized and carrying out functions in Ingham County, State of Michigan. Its functions include, but are not limited to: organizing, operating,

staffing, training, safety, operations, and safety of the public and students at Michigan State University.

16.    Upon information and belief, at all times relevant hereto, Defendant, CHIEF JOHN PRUSH, (hereinafter referred to as "PRUSH") is citizen of the State of Michigan and was acting under the color of state law within the course and scope of his employment as a Deputy for MICHIGAN STATE UNIVERSITY POLICE AND PUBLIC SAFTY.

17.    At all times relevant hereto, Defendant, MICHIGAN STATE UNIVERSITY INFRASTRUCTURE PLANNING AND FACILITIES, was and is a municipal corporation, duly organized and carrying out functions in Ingham County, State of Michigan. Its functions include, but are not limited to: organizing, operating, staffing, training, safety, operations, and safety of the public and students at Michigan State University.

18.    Upon information and belief, at all times relevant hereto, Defendant, DAN BOLLMAN, (hereinafter referred to as "BOLLMAN") is a citizen of the State of Michigan and was acting under the color of state law within the course and scope of his employment as the director MICHIGAN STATE UNIVERSITY INFRASTRUCTURE PLANNING AND FACILITIES.

## FACTUAL STATEMENT

19.    Plaintiff hereby reincorporates by reference and reassert each and every allegation set forth in the previous paragraphs of this Complaint as if fully set forth herein.

20.    Every Monday, Mr. Bowman was required to attend IAH class about Cuba. The class ran from 7:00 p.m. to 8:50 p.m. and was held in Berkey Hall, Room 114.

21.    The University required mandatory in-person attendance for the class.

22.     At 7:19 p.m., on February 13, 2023, a gunman arrived at Michigan State University.

23.    From 7:24 p.m. to 8:12 p.m., the gunman was seen walking around campus and entered Berkey Hall on the University's campus.

24.     The gunman was allowed to gain access to Berkley Hall and entered Room 114, where Marco Díaz-Muñoz was teaching, and Mr. Bowman was attending class. The gunman fired repeatedly into the classroom, shooting seven students.

25.    There was no security personnel or measures in place to secure Berkley Hall at the time the shooting.

26.    There was no identification verification in place to ensure that only authorized students and staff were permitted in the building.

27.    At the time of this occurrence, in-state tuition at Michigan State University is roughly $16,000 a year or roughly $1,300 a month.

28.    There are roughly 40,000 students at Michigan State University enrolled in the undergraduate programs.

29.    When tuition is paid Michigan State University is to give a student access to classrooms, education, use of its facility, recreation access, and the ability to live on campus.

30.    Mr. Bowman had paid his tuition.

31.    Michigan State University had the technology and equipment to allow for virtual classes to be held and had the ability to retain security personnel and other appropriate measures to secure its instructional buildings.

32.    Michigan State University had the money and the funding to install door locks.

33.    Berkley Hall and other campus buildings were left open to the public and outsiders were able to obtain access to the buildings and roam the buildings without any security.

34.    Outsiders are able to freely roam the buildings without any screenings or identifiable reason to be in the building.

35.    Michigan State University knew that there were no security measures in place to limit access to the buildings, including Berkley Hall.

36.    Michigan State University chose not to implement any security measures for its instructional buildings despite increasing school-based gun violence nationwide.

37.    Michigan State University, though Bollman and Woodruff, made the decision to not install classroom locks and instead spent over $200 million on a new recreation center.

38.    In 2022, Michigan State University, started with a $3 billion budget.

39.    In 2022, Michigan State University president was paid over $1 million.

40.    Since 2008, students in Michigan have experienced 19 school shootings.

41.    In 2021, nationally there were 74 school shootings.

42.    In 2022, nationally there were 80 school shootings.

43.    In the early days of 2023, before this horrific shooting, nationally there were 9 school shootings.

44.    Because of Defendants' failings as discussed below, a gunman was able to walk around campus and obtain unfettered access to the buildings and classrooms prior to the shootings.

45.    No one from Michigan State University stopped or questioned the gunman prior to the tragic events alleged herein.

46.    Through its conduct, Michigan State University allowed and gave permission to the gunman to roam the campus freely.

47.    Through its conduct, Michigan State University encouraged the gunman to enter the budling where classes were being held.

48.     Even after the horrific shooting began, the police did not arrive for 10 to 15 minutes.

49.     The gunman was able to discharge his gun well over 10 times and freely walk away from the campus without issue.

50.     Prior to July of 2022, classes were held remotely and did not require in-person attendance.

51.     In July of 2022, President Woodruff and Vice President Lynch issued a policy change that mandated classes from virtual to in-person, with in-person attendance being required. This policy change made in-person attendance mandatory and required faculty to include it as a factor in determining the student's grade.

52.     At all times relevant, Defendants' actions, by mandating each student attend class in-person at an unsecured building with the knowledge of increased campus gun violence and its substandard security interventions, constitutes conduct so reckless as to demonstrate a substantial lack of concern for whether an injury result.

53.     Defendants knew and/or should have known that their actions increased the risk that Plaintiff would be exposed to acts of violence.

54.     Justin Bowman was in Room 114 for nearly an hour prior to the shooting.

55.    He recalls, in his direct eyeline, the gunman freely entering the classroom covered in baggy clothing, masked as if he was not human, and aiming a gun straight at him.

56.    As the gunman began executing his classmates, Mr. Bowman dove the opposite direction, to his left, and squirmed his way thought the bodies trying to reach safety.

57.    Mr. Bowman had to maneuver through bodies and blood in an attempt to save his life.

58.    There were 25 students in the classroom.

59.    In an effort to try to save his life, Mr. Bowman attempted to fake dead, by pretending he was bleeding and already shot.

60.    The blood that he covered himself with was the blood of his classmates, who were fatally shot.

61.    Mr. Bowman laid there through the sobs and screams of his classmates as the gunman continued his rampage.

62.    Mr. Bowman acted dead through the fear, the shock, the anger, and the emotional trauma of believing that these are the last moments of his young life.

63.    Mr. Bowman laid there thinking he did not get a chance to say goodbye to his parents or his loved ones.

64.    Mr. Bowman laid there, pretending to be dead, for what felt like an eternity until he heard the sound of shattered glass and students trying to break free from the windows.

65.    Mr. Bowman stood up and saw that the students in the rows directly in front of him and behind him had been shot.

66.    He turned around to see a student shot who was gasping for air.

67.    He looked in front of him and saw another student struggling for her life. He did not want her to die alone. He chose to remain in the room to hold her and comfort her as she died.

68.    Mr. Bowman took his shirt off and tried to use it as a bandage to stop the bleeding from the student's head. He held it there, applying pressure, hoping it would stop the bleeding.

69.    The classmate died as Mr. Bowman sat there holding her.  She died in his arms, after he did all that he could.

70.    Neither the police nor the paramedics arrived before the young woman died.

71.    Mr. Bowman was trying to save her life.

72.    Every single day, Mr. Bowman thinks of this horrific event and relives that tragic time.

73.    Meanwhile, on the news, Mr. Bowman's family was hearing about the horror as it unfolded. They had no idea what was going on with their son or if he was even alive.

74.    Mr. Bowman sat there after the fact in a state of shock. He could not believe he was alive while his classmates surrounded him dead or critically wounded.

75.    No one walked Mr. Bowman to his car after the police arrived. He was just left to go, shirtless and covered in blood.

76.    While making his way out of the classroom where he held someone to their last breath, he called his mom. He spoke to her. She heard his voice.  He was alive. He realized at that moment that he survived.

77.    Mr. Bowman lived a nightmare. Not the scariest of scary movies would dare to show what he endured.

78.    The reality of what Mr. Bowman lived through is so horrific that not even Hollywood would dare tackle it.

79.    Yet, Michigan State University has taken the position that because Mr. Bowman is alive, he is not entitled to compensation.

80.    Mr. Bowman's mental and emotional wounds are real. They haunt him.

81.    He lives with the smell, images of the scene, the images of his dying classmate in his arms, the sounds of gunfire, and the terror of nearly dying every single day.

82.    Mr. Bowman experiences these damages every single day.

83.    The doors to classrooms in Berkley Hall did not lock.

84.    The entrances to Berkley Hall were not secured after hours.

85.    Michigan State University could have locked all doors remotely, they had the ability to have a lock down, however they did not because their software was not up-to-date. President Woodruff and Vice President Lynch made the decision to not update the software and allowed these security failures to exist because of their choices.

86.    Prior to that horrific date, President Woodruff and Vice President Lynch knew that there were severe security issues on campus.

87.    Teachers and students voiced concerns regarding building safety, lack of locks, and other security issues several months prior to the horrific events alleged in this complaint.

88.    In a public meeting about five months before this tragedy, Michigan State University teachers voiced to administration that they did not feel safe and doors do not lock to their classrooms and buildings.

89.    President Woodruff and Vice President Lynch were present at that meeting and chose to disregard their concerns.

90.    President Woodruff and Vice President Lynch chose to leave the buildings and classrooms open to the public despite the safety concerns voiced by the staff.

91.    At all times relevant, Plaintiff was safer before Defendants took the action of making the buildings open to the public.  By virtue of Defendants' actions, they substantially increased the harm to Plaintiff thereby increasing the risk that Plaintiff, would be exposed to the acts of violence.

92.    Michigan State University is no stranger to being told of the significant security deficits on campus when it comes to protecting their students. In 2019, the Office of Civil Rights and the Federal Student Aid did an investigation into the University.

93.    As a result of that investigation, Michigan State University was fined $4.5 million for violation of the Clery Act; the largest fine in history at that time issued to a University.

94.    The investigation found that Michigan State University failed to, "Properly Classify Reported Incidents and Disclose Crime Statistics".

95.    Michigan State University was also cited for, "Failure to Issue Timely Warnings in Accordance with Federal Regulations."

96.    Failure No. 3 was: "Failure to Identify and Notify Campus Security Authorities and to Establish an Adequate System for Collecting Crimes Statistics from all Required Sources."

97.    Lastly, Michigan State University was cited for: "Lack of Administrative Capability."

14

98.    Following the violations, Michigan State University entered into a consent agreement with United States Department of Education on September 3, 2019, which established they would pay the $4.5 million fine and make corrective actions to their violations.

99.    Following the tragedy alleged in this Complaint, total safety improvements cost the University only $10 Million, which included costs associated with expediting the installation of the locking mechanisms.

100.   By expending only 0.3% of the budget, Michigan State University could have implemented the necessary security interventions to keep Plaintiff and his classmates safe and prevented this tragedy.

101.   Defendants made the choice, in the face of students and staff voicing safety concerns, not to implement basic security interventions that would have cost less than half of a percent of the budget to keep staff and students safe.

102.   Defendants' conduct was outrageous and shocks the conscience.

103.   Defendants are not entitled to governmental and/or qualified immunity.

104.   Defendants acted with conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results that was the proximate cause of Plaintiff's injuries.

## COUNT I
## VIOLATION OF CIVIL RIGHTS PURSUANT TO THE 14TH AMENDMENT TO THE CONSTITUTION AND 42 U.S.C. §1983, 1988 STATE CREATED DANGER AS TO ALL DEFENDANTS

105.   Plaintiff hereby reincorporates and reasserts each and every allegation set forth in the previous paragraphs of this Complaint as if fully set forth herein.

106.   As a citizen of the United States, Plaintiff, JUSTIN BOWMAN, was entitled to all rights, privileges, and immunities accorded to all citizens of the State of Michigan and of the United States.

107.  Pursuant to the Fourteenth Amendment of the United States Constitution, at all times relevant hereto, Plaintiff, JUSTIN BOWMAN, had a clearly established right to be free from danger created and/or increased by Defendants.

108.   At all times relevant hereto, that the Defendants, WOODRUFF, LYNCH, PRUSH, and BOLLMAN, were acting under the color of state law and created and/or increased a state created danger by substantially increasing the risk of harm to Plaintiff, JUSTIN BOWMAN, in reckless disregard to Plaintiff's safety, thereby increasing the risk that Plaintiff would be exposed to the gunman's acts of violence.

109.   That actions by Defendants, WOODRUFF, LYNCH, PRUSH, and BOLLMAN under the 14th Amendment to the United States Constitution, as well as 42 U.S.C. §1983 and §1988 were all performed under the color of state law and were

objectively unreasonable and performed knowingly and deliberately and indifferently to Plaintiff, JUSTIN BOWMAN, and in reckless disregard to Plaintiff's safety.

110.   That each and all Defendants were acting under the color of state law when they deprived Plaintiff, JUSTIN BOWMAN of his clearly established rights, privileges, and immunities in violation of the 14th Amendment of the Constitution of the United States and in violation of 42 U.S.C. §1983 and §1988.

111.   That each and every Individual Defendant exhibited deliberate indifference, pursuant to the Fourteenth Amendment to the United States Constitution, by taking affirmative actions that jeopardized the safety of the students and Plaintiff resulting in the students and Plaintiff being exposed to higher risks than they were before the action of each and every Individual Defendant.  Their actions created the danger and increased the risk of harm that Plaintiff and other students would be exposed to acts of violence, through the following actions:

   a.  Deliberately and intentionally making students come attend class in-person;

   b.  Deliberately and intentionally removing the option for virtual instructions/attendance;

   c.  Deliberately and intentionally making in-person attendance a factor in the student's grade;

   d.  Deliberately and intentionally allowing guns on school campus;

   e.  Deliberately and intentionally allowing the instructional buildings to be open to the public, even during the evenings;

17

f.   Deliberately and intentionally allowing non-students to the halls;

g.   Deciding against using ID scanning to enter instructional buildings;

h.   Deciding against securing the doors to the entryways of the instructional buildings and the individual classrooms;

i.   Deliberately opening and unlocking doors of the instructional buildings and the individual classrooms so that the public could gain access to the buildings while classes are being held;

j.   Deciding against stationing security personnel in the instructional buildings and the individual classrooms;

k.   Deciding against having campus police officers escort the injured students out of the instructional buildings and the individual classrooms;

l.   Deliberately and intentionally choosing to allow an antiquated security system on campus that did not allow for real-time footage of the limited security cameras that were functioning at the time;

m.   Deliberately and intentionally choosing not to place campus police or security personnel at the instructional buildings that had evening classes going on;

n.   Deliberately and intentionally choosing not to allocate money to campus security so as to jeopardize the well-being of staff and students attending classes;

o.   Deliberately and intentionally choosing to put non-essential funding, such as the construction of a recreation center, over funding initiatives focused on staff and student safety;

p.   Recklessly, or otherwise allowing a gunman unfettered access to the campus and the ability to enter classrooms where students who paid tuition were receiving instruction;

q.   Crafted and enforced deficient and faulty policies, procedures, and practices set forth in this Complaint that jeopardized the safety and wellbeing of staff and students;

r.   Any and all other breaches that may become known throughout the course of this litigation.

18

112.    That all of the above conduct alleged in the preceding paragraphs substantially increased the harm to Plaintiff, JUSTIN BOWMAN, who were safer before Defendants took the affirmative acts described in the preceding paragraphs.

113.    That the above-described conduct of Defendants, WOODRUFF, LYNCH, PRUSH, and BOLLMAN as specifically set forth above, were the proximate cause of Plaintiff, JUSTIN BOWMAN's injuries and damages, including but not limited to the following:

    a.  Fright, shock, and terror;

    b.  Conscious pain and suffering;

    c.  Need for therapy;

    d.  Post-Traumatic Stress Disorder;

    e.  Terrors;

    f.  Disruption of his life;

    g.  Pain and suffering;

    h.  Anxiety;

    i.  Mental anguish;

    j.  Emotional Distress;

    k.  Fright and shock;

    l.  Humiliation and/or mortification;

    m. Past and future reasonable medical and hospital expenses;

    n.  Past and future wage loss and loss of earnings capacity;

    o.  Punitive damages;

    p.  Exemplary damages;

q.   Any and all compensatory damages, both past and future;

r.   Attorney fees and costs pursuant to 42 U.S.C. §1988; and

s.   Other damages, injuries, and consequences that are found to be related to the incident that develops during the course of discovery.

**WHEREFORE**, Plaintiff, JUSTIN BOWMAN request that this Honorable Court enter judgment in his favor and against Defendants, jointly and severally, in an amount in excess of Fifty Million Dollars ($50,000,000.00), together with interest, costs and attorney fees, as well as punitive and/or exemplary damages.

**COUNT II**
**VIOLATION OF CIVIL RIGHTS PURSUANT TO THE**
**14TH AMENDMENT TO THE CONSTITUTION**
**AND 42 U.S.C. §1983, 1988 – SUPERVISORY LIABILITY**

114.   Plaintiff hereby reincorporates and reasserts each and every allegation set forth in the previous paragraphs of this Complaint.

115.   At all times relevant hereto, Defendant, WOODRUFF, was the President at MICHIGAN STATE UNIVERSITY, and Defendant, LYNCH as the university's Vice President directly supervised and oversaw the actions of Defendants, PRUSH and BOLLMAN as well as several others and encouraged the security deficiencies that allowed this incident to occur and/or directly participated in it by choosing how to secure buildings, allocate budgeting for security measures, create safety plans, station the campus police and security personnel, allow unfettered public access inside of the classrooms and buildings, and delay police response to this incident.

20

116.   At all times relevant hereto, Defendant PRUSH was the Police Chief at MICHIGAN STATE UNIVERSITY POLICE AND PUBLIC SAFETY and directly supervised and oversaw the actions of several others and encouraged the security deficiencies that allowed this incident to occur and/or directly participated in it by choosing how to secure buildings, allocate budgeting for security measures, create safety plans, station the campus police and security personnel, allow unfettered public access inside of the classrooms and buildings, and delay police response to this incident.

117.   At all times relevant hereto, Defendant, BOLLMAN was the head of MICHIGAN STATE UNIVERSITY INFRASTRUCTURE PLANNING AND FACILITIES, who was the direct supervisor and oversaw the actions of several others and encouraged the security deficiencies that allowed this incident to occur and/or directly participated in it by choosing how to secure buildings, allocate budgeting for security measures, create safety plans, station the campus police and security personnel, allow unfettered public access inside of the classrooms and buildings, and delay police response to this incident.

118.  By inadequately training and/or supervising their campus police, security personnel, teachers, staff, and deans, and having a custom or policy of indifference to the constitutional rights of their citizens, Defendants, WOODRUFF, LYNCH, PRUSH, and BOLLMAN encouraged and cultivated the conduct which

then caused a violation of Plaintiff's rights under the Fourteenth Amendments of the United States Constitution.

119.  Pursuant to the Fourteenth Amendment of the United States Constitution, at all times relevant hereto, Plaintiff, JUSTIN BOWMAN had a clearly established right to be free from dangers created by the Defendants.

120.  That actions and omissions by Defendants, WOODRUFF, LYNCH, PRUSH, and BOLLMAN, under the 14th Amendment to the United States Constitution, as well as 42 U.S.C. §1983 and §1988 were all performed under the color of state law and were objectively unreasonable and performed knowingly, deliberately and indifferently to Plaintiff, JUSTIN BOWMAN, and in reckless disregard of his safety.

121.  That Defendants, WOODRUFF, LYNCH, PRUSH, and BOLLMAN were acting under the color of state law when they deprived Plaintiff JUSTIN BOWMAN of his clearly established rights, privileges, and immunities in violation of the 14th Amendment of the Constitution of the United States, and of 42 U.S.C. §1983 and §1988.

122.  The Defendants exhibited deliberate indifference, pursuant to the Fourteenth Amendment to the United States Constitution, to be free from acts that create the risk of harm and/or increase the risk of harm that an individual will be exposed to private acts of violence, to wit:

a. Deliberately and intentionally making students come attend class in-person;

b. Deliberately and intentionally removing the option for virtual instructions/attendance;

c. Deliberately and intentionally making in-person attendance a factor in the student's grade;

d. Deliberately and intentionally allowing guns on school campus;

e. Deliberately and intentionally allowing the instructional buildings to be open to the public, even during the evenings;

f. Deliberately and intentionally allowing non-students to the halls;

g. Deciding against using ID scanning to enter instructional buildings;

h. Deciding against securing the doors to the entryways of the instructional buildings and the individual classrooms;

i. Deliberately opening and unlocking doors of the instructional buildings and the individual classrooms so that the public could gain access to the buildings while classes are being held;

j. Deciding against stationing security personnel in the instructional buildings and the individual classrooms;

k. Deciding against having campus police officers escort the injured students out of the instructional buildings and the individual classrooms;

l. Deliberately and intentionally choosing to allow an antiquated security system on campus that did not allow for real-time footage of the limited security cameras that were functioning at the time;

m. Deliberately and intentionally choosing not to place campus police or security personnel at the instructional buildings that had evening classes going on;

n. Deliberately and intentionally choosing not to allocate money to campus security so as to jeopardize the well-being of staff and students attending classes;

o. Deliberately and intentionally choosing to put non-essential funding, such as the construction of a recreation center, over funding initiatives focused on staff and student safety;

p. Recklessly, or otherwise allowing a gunman unfettered access to the campus and the ability to enter classrooms where students who paid tuition were receiving instruction;

q. Crafted and enforced deficient and faulty policies, procedures, and practices set forth in this Complaint that jeopardized the safety and wellbeing of staff and students;

r. Any and all other breaches that may become known throughout the course of this litigation.

123. That the above-described conduct of Defendants WOODRUFF, LYNCH, PRUSH, and BOLLMAN as specifically set forth above, were the proximate cause of Plaintiff, JUSTIN BOWMAN's injuries and damages, including but not limited to the following:

a. Fright, shock, and terror;

b. Conscious pain and suffering;

c. Need for therapy;

d. Post-Traumatic Stress Disorder;

e. Terrors;

f. Disruption of his life;

g. Pain and suffering;

h. Anxiety;

i. Mental anguish;

j. Emotional Distress;

k. Fright and shock;

l.  Humiliation and/or mortification;

m.  Past and future reasonable medical and hospital expenses;

n.  Past and future wage loss and loss of earnings capacity;

o.  Punitive damages;

p.  Exemplary damages;

q.  Any and all compensatory damages, both past and future;

r.  Attorney fees and costs pursuant to 42 U.S.C. §1988; and

s.  Other damages, injuries, and consequences that are found to be related to the incident that develops during the course of discovery.

**WHEREFORE**, Plaintiff, JUSTIN BOWMAN requests that this Honorable Court enter judgment in his favor and against Defendants, jointly and severally, in an amount in excess of Fifty Million Dollars ($50,000,000.00), together with interest, costs and attorney fees, as well as punitive and/or exemplary damages.

## COUNT III
## 42 U.S.C. § 1983 – *MONELL* LIABILITY

124.   Plaintiff hereby reincorporates and reasserts each and every allegation set forth in the previous paragraphs of this Complaint.

125.   At all times relevant, Defendants, MICHIGAN STATE UNIVERSITY, MICHIGAN STATE UNIVERSITY POLICE AND PUBLIC SAFETY, and MICHIGAN STATE UNIVERSITY INFRASTRUCTURE PLANNING AND FACILITIES failed to adequately to train, discipline, and supervise Defendants, WOODRUFF, LYNCH, PRUSH, and BOLLMAN, from promulgating and maintaining *de facto* unconstitutional customs, policies, or practices rendering them

liable for the constitutional violations alleged herein pursuant to *Monell v. Dept. of Social Services of the City of New York,* 436 U.S. 658 (1978).

126.    At all times relevant, Defendants, MICHIGAN STATE UNIVERSITY, MICHIGAN STATE UNIVERSITY POLICE AND PUBLIC SAFETY, and MICHIGAN STATE UNIVERSITY INFRASTRUCTURE PLANNING AND FACILITIES knew or should have known that the policies, procedures, training supervision and discipline promulgated by Defendants, WOODRUFF, LYNCH, PRUSH, and BOLLMAN, were inadequate for the tasks that each Defendant was required to perform.

127.    At all times relevant, Defendants MICHIGAN STATE UNIVERSITY, MICHIGAN STATE UNIVERSITY POLICE AND PUBLIC SAFETY, and MICHIGAN STATE UNIVERSITY INFRASTRUCTURE PLANNING AND FACILITIES failed to establish, implement, or execute adequate policies, procedures, rules and regulations to ensure that their actions did not create or increase the risk Plaintiff, JUSTIN BOWMAN would be exposed to acts of violence.

128.    At all times relevant, Defendants MICHIGAN STATE UNIVERSITY, MICHIGAN STATE UNIVERSITY POLICE AND PUBLIC SAFETY, and MICHIGAN STATE UNIVERSITY INFRASTRUCTURE PLANNING AND FACILITIES failed to establish, implement, or execute adequate policies, procedures, rules and regulations to ensure that their staff, teachers, counselors, and administrative personnel do not take actions that create or increase the risk of harm

to students attending Michigan State University, including but not limited to Plaintiff, JUSTIN BOWMAN.

129.   At all times relevant, Defendants, MICHIGAN STATE UNIVERSITY, MICHIGAN STATE UNIVERSITY POLICE AND PUBLIC SAFETY, and MICHIGAN STATE UNIVERSITY INFRASTRUCTURE PLANNING AND FACILITIES were on notice or should have known, of a history, custom, propensity, and pattern for Defendants, WOODRUFF, LYNCH, PRUSH, and BOLLMAN as well as other employees to fail to adequately protect the staff and students through implementation of proper funding, policies, and procedures to properly secure buildings, keep guns off campus, maintain industry standard security interventions, maintain adequate security personnel, and refrain from acting in such a way that created a risk of harm to staff and students and/or increased a risk of harm to staff and students, including Plaintiff, JUSTIN BOWMAN.

130. Defendants, MICHIGAN STATE UNIVERSITY, MICHIGAN STATE UNIVERSITY POLICE AND PUBLIC SAFETY, and MICHIGAN STATE UNIVERSITY INFRASTRUCTURE PLANNING AND FACILITIES explicitly and implicitly authorized, approved, or knowingly acquiesced in the deliberate indifference to the strong likelihood that constitutional violations, such as in the instant case, would occur, and pursued policies, practices, and customs that were a direct and proximate cause of the deprivations of Plaintiff's constitutional rights.

131.   At all times relevant, Defendants, MICHIGAN STATE UNIVERSITY, MICHIGAN STATE UNIVERSITY POLICE AND PUBLIC SAFETY, and MICHIGAN STATE UNIVERSITY INFRASTRUCTURE PLANNING AND FACILITIES knew that their policies, procedures, customs, propensity and patterns of failing to properly secure buildings, keep guns off campus, maintain industry standard security interventions, maintain adequate security personnel, and refrain from acting in such a way that created a risk of harm to staff and students would deprive citizens, such as Plaintiff, JUSTIN BOWMAN, of his constitutional rights.

132.   At all times relevant, Defendants, MICHIGAN STATE UNIVERSITY, MICHIGAN STATE UNIVERSITY POLICE AND PUBLIC SAFETY, and MICHIGAN STATE UNIVERSITY INFRASTRUCTURE PLANNING AND FACILITIES knew that its policies, procedures, customs, propensity and patterns allowed individuals unfettered access to the instructional building and classrooms without any question while carrying a loaded firearm such that Defendants' actions created a risk of harm and/or an increased risk of harm to the students, including Plaintiff, JUSTIN BOWMAN.

133.   By inadequately training and/or supervising their staff and having a custom or policy of deliberate indifference to the constitutional rights of their citizens, Defendants, MICHIGAN STATE UNIVERSITY, MICHIGAN STATE UNIVERSITY POLICE AND PUBLIC SAFETY, and MICHIGAN STATE UNIVERSITY INFRASTRUCTURE PLANNING AND FACILITIES encouraged

and cultivated the conduct which violated Plaintiff's rights under the Fourteenth Amendments of the United States Constitution, and the environment for the gunman to commit acts of violence, thereby increasing the risk that Plaintiff would be exposed to violence.

134.   That the above-described conduct of Defendants was the proximate cause of Plaintiff, JUSTIN BOWMAN's injuries and damages, including but not limited to the following:

- a.  Fright, shock, and terror;
- b.  Conscious pain and suffering;
- c.  Need for therapy;
- d.  Post-Traumatic Stress Disorder;
- e.  Terrors;
- f.  Disruption of his life;
- g.  Pain and suffering;
- h.  Anxiety;
- i.  Mental anguish;
- j.  Emotional Distress;
- k.  Fright and shock;
- l.  Humiliation and/or mortification;
- m. Past and future reasonable medical and hospital expenses;
- n.  Past and future wage loss and loss of earnings capacity;
- o.  Punitive damages;
- p.  Exemplary damages;

q.  Any and all compensatory damages, both past and future;

r.  Attorney fees and costs pursuant to 42 U.S.C. §1988; and

s.  Other damages, injuries, and consequences that are found to be related to the incident that develops during the course of discovery.

135.  Defendants are not entitled to governmental or qualified immunity.

**WHEREFORE**, Plaintiff, JUSTIN BOWMAN requests that this Honorable Court enter judgment in his favor and against Defendants, jointly and severally, in an amount in excess of Fifty Hundred Million Dollars ($50,000,000.00), together with interest, costs and attorneys' fees, as well as punitive and/or exemplary damages.

## COUNT IV– GROSS NEGLIGENCE
## DEFENDANT TERESA WOODRUFF

136.  Plaintiff hereby reincorporates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

137.  At all times relevant hereto, and pursuant to Michigan Law, Defendant, WOODRUFF owed a duty to act with care for the safety of the public while acting as President of MICHIGAN STATE UNIVERSITY  and specifically owed duties to Plaintiff, JUSTIN BOWMAN, which duties include, but are not limited to, obeying all laws, statutes and local ordinances in a way that is not grossly negligent.

138.  Defendant, WOODRUFF had actual knowledge of the threats of violence made against MICHIGAN STATE UNIVERSITY and its student body.

139.    Defendant, WOODRUFF had actual knowledge of concerns from staff and students related to security deficiencies at MICHIGAN STATE UNIVERSITY.

140.    Defendant, WOODRUFF chose to disregard the concerns and security deficiencies that existed at Michigan State University that made the campus unsafe for in-person student attendance.

141.    Defendant, WOODRUFF chose to implement a policy at Michigan State University that mandated in-person student attendance and penalized a student's grade if they did not participate in in-person attendance.

142.    Defendant, WOODRUFF chose not to secure the buildings.

143.    Defendant, WOODRUFF chose to put profits over staff and student safety.

144.    Defendant, WOODRUFF chose to create an environment that allowed guns on campus.

145.    Defendant, WOODRUFF chose to not have campus police or security personnel present at instructional buildings.

146.    Defendant, WOODRUFF chose to allow the University to have antiquated security monitoring that did not allow for real-time visualization of campus.

147.    Defendant, WOODRUFF chose not to require ID checks or building access scanning.

148.   At all times relevant hereto, Defendant, WOODRUFF's conduct was so reckless that it demonstrated a substantial lack of concern for whether an injury resulted when he acted as set forth above. Defendant, WOODRUFF's grossly negligent actions were such that she is not entitled to governmental immunity pursuant to MCL 691.1407(2).

149.   That the above-described conduct of Defendant, WOODRUFF was the proximate cause of Plaintiff, JUSTIN BOWMAN's injuries and damages, including but not limited to the following:

    a.  Fright, shock, and terror;

    b.  Conscious pain and suffering;

    c.  Need for therapy;

    d.  Post-Traumatic Stress Disorder;

    e.  Terrors;

    f.  Disruption of his life;

    g.  Pain and suffering;

    h.  Anxiety;

    i.  Mental anguish;

    j.  Emotional Distress;

    k.  Fright and shock;

    l.  Humiliation and/or mortification;

    m. Past and future reasonable medical and hospital expenses;

    n.  Past and future wage loss and loss of earnings capacity;

    o.  Exemplary damages;

p. Any and all compensatory damages, both past and future;

q. Other damages, injuries, and consequences that are found to be related to the incident that develops during the course of discovery.

150. The above actions committed by Defendant, WOODRUFF were committed while acting under the course and scope of her employment with MICHIGAN STATE UNIVERSITY.

151. The above actions committed by Defendant, WOODRUFF put the students at MICHIGAN STATE UNIVERSITY, and specifically Plaintiff, JUSTIN BOWMAN in greater danger than they were in prior to Defendant's acts.

152. Defendant MICHIGAN STATE UNIVERSITY is vicariously liable for the actions of Defendant WOODRUFF in accordance with *Ross v Consumers Power (On Rehearing)*, 420 Mich 567, 621-625; 363 NW2d 641 (1984).

**WHEREFORE**, Plaintiff, JUSTIN BOWMAN respectfully requests judgment in his favor and against Defendants, WOODRUFF and MICHIGAN STATE UNIVERSITY jointly in an amount in excess of Fifty Hundred Million Dollars ($50,000,000.00), exclusive of costs, interest, and attorney fees.

## COUNT V– GROSS NEGLIGENCE
## DEFENDANT MARLON LYNCH

153. Plaintiff hereby reincorporates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

154. At all times relevant hereto, and pursuant to Michigan Law, Defendant, LYNCH owed a duty to act with care for the safety of the public while acting as

Vice President of MICHIGAN STATE UNIVERSITY and specifically owed duties to Plaintiff, JUSTIN BOWMAN, which duties include, but are not limited to, obeying all laws, statutes and local ordinances in a way that is not grossly negligent.

155.   Defendant, LYNCH had actual knowledge of the threats of violence made against MICHIGAN STATE UNIVERSITY and its student body.

156.   Defendant, LYNCH had actual knowledge of concerns from staff and students related to security deficiencies at MICHIGAN STATE UNIVERSITY.

157.   Defendant, LYNCH chose to disregard the concerns and security deficiencies that existed at Michigan State University that made the campus unsafe for in-person student attendance.

158.   Defendant, LYNCH chose to implement a policy at Michigan State University that mandated in-person student attendance and penalized a student's grade if they did not participate in in-person attendance.

159.   Defendant, LYNCH chose not to secure the buildings.

160.   Defendant, LYNCH chose to put profits over staff and student safety.

161.   Defendant, LYNCH chose to create an environment that allowed guns on campus.

162.   Defendant, LYNCH chose not to have campus police or security personnel present at instructional buildings.

163.   Defendant, LYNCH chose to allow the University to have antiquated security monitoring that did not allow for real-time visualization of campus.

164.    Defendant, LYNCH chose not to require ID checks or building access scanning.

165.    At all times relevant hereto, Defendant, LYNCH's conduct was so reckless that it demonstrated a substantial lack of concern for whether an injury resulted when he acted as set forth above. Defendant, LYNCH's grossly negligent actions were such that he is not entitled to governmental immunity pursuant to MCL 691.1407(2).

166.    That the above-described conduct of Defendant, LYNCH was the proximate cause of Plaintiff, JUSTIN BOWMAN's injuries and damages, including but not limited to the following:

    a.  Fright, shock, and terror;

    b.  Conscious pain and suffering;

    c.  Need for therapy;

    d.  Post-Traumatic Stress Disorder;

    e.  Terrors;

    f.  Disruption of his life;

    g.  Pain and suffering;

    h.  Anxiety;

    i.  Mental anguish;

    j.  Emotional Distress;

    k.  Fright and shock;

    l.  Humiliation and/or mortification;

m. Past and future reasonable medical and hospital expenses;

n. Past and future wage loss and loss of earnings capacity;

o. Exemplary damages;

p. Any and all compensatory damages, both past and future;

q. Other damages, injuries, and consequences that are found to be related to the incident that develops during the course of discovery.

167.   The above actions committed by Defendant, LYNCH were committed while acting under the course and scope of her employment with MICHIGAN STATE UNIVERSITY.

168.   The above actions committed by Defendant, LYNCH put the students at MICHIGAN STATE UNIVERSITY, and specifically Plaintiff, JUSTIN BOWMAN in greater danger than they were in prior to Defendant's acts.

169.   Defendant, MICHIGAN STATE UNIVERSITY is vicariously liable for the actions of Defendant, LYNCH in accordance with *Ross v Consumers Power (On Rehearing)*, 420 Mich 567, 621-625; 363 NW2d 641 (1984).

**WHEREFORE**, Plaintiff, JUSTIN BOWMAN respectfully request judgment in his favor and against Defendants, LYNCH and MICHIGAN STATE UNIVERSITY jointly in an amount in excess of Fifty Hundred Million Dollars ($50,000,000.00), exclusive of costs, interest, and attorney fees.

## COUNT VI – GROSS NEGLIGENCE,
## DEFENDANT CHIEF JOHN PRUSH

170.    Plaintiff hereby reincorporates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

171.    At all times relevant hereto, and pursuant to Michigan Law, Defendant, PRUSH owed a duty to act with care for the safety of the public while acting as Police Chief of MICHIGAN STATE UNIVERSITY POLICE AND PUBLIC SAFETY and specifically owed duties to Plaintiff JUSTIN BOWMAN, which duties include, but are not limited to, obeying all laws, statutes and local ordinances in a way that is not grossly negligent.

172.    Defendant, PRUSH had actual knowledge of the threats of violence made against MICHIGAN STATE UNIVERSITY and its student body.

173.    Defendant, PRUSH had actual knowledge of concerns from staff and students related to security deficiencies at MICHIGAN STATE UNIVERSITY.

174.    Defendant, PRUSH chose to disregard the concerns and security deficiencies that existed at Michigan State University that made the campus unsafe for in-person student attendance.

175.    Defendant, PRUSH chose to implement a policy at Michigan State University that mandated in-person student attendance and penalized a student's grade if they did not participate in in-person attendance.

176.    Defendant, PRUSH chose not to secure the buildings.

37

177.   Defendant, PRUSH chose to put profits over staff and student safety.

178.   Defendant, PRUSH chose to create an environment that allowed guns on campus.

179.   Defendant, PRUSH chose not to have campus police or security personnel present at instructional buildings.

180.   Defendant, PRUSH chose to allow the University to have antiquated security monitoring that did not allow for real-time visualization of campus.

181.   Defendant, PRUSH chose not to require ID checks or building access scanning.

182.   At all times relevant hereto, Defendant, PRUSH's conduct was so reckless that it demonstrated a substantial lack of concern for whether an injury resulted when he acted as set forth above. Defendant, PRUSH's grossly negligent actions were such that he is not entitled to governmental immunity pursuant to MCL 691.1407(2).

183.   That the above-described conduct of Defendant, PRUSH was the proximate cause of Plaintiff, JUSTIN BOWMAN's injuries and damages, including but not limited to the following:

      a.  Fright, shock, and terror;

      b.  Conscious pain and suffering;

      c.  Need for therapy;

      d.  Post-Traumatic Stress Disorder;

e.  Terrors;

f.  Disruption of his life;

g.  Pain and suffering;

h.  Anxiety;

i.  Mental anguish;

j.  Emotional Distress;

k.  Fright and shock;

l.  Humiliation and/or mortification;

m. Past and future reasonable medical and hospital expenses;

n.  Past and future wage loss and loss of earnings capacity;

o.  Exemplary damages;

p.  Any and all compensatory damages, both past and future;

q.  Other damages, injuries, and consequences that are found to be related to the incident that develops during the course of discovery.

184.   The above actions committed by Defendant, PRUSH were committed while acting under the course and scope of his employment with MICHIGAN STATE UNIVERSITY and/or MICHIGAN STATE UNIVERSITY POLICE AND PUBLIC SAFETY.

185.   The above actions committed by Defendant, PRUSH put the students at MICHIGAN STATE UNIVERSITY, and specifically Plaintiff, JUSTIN BOWMAN in greater danger than they were in prior to Defendant's acts.

186.  Defendant, MICHIGAN STATE UNIVERSITY and/or MICHIGAN STATE UNIVERSITY POLICE AND PUBLIC SAFETY is vicariously liable for

the actions of Defendant, PRUSH in accordance with *Ross v Consumers Power (On Rehearing)*, 420 Mich 567, 621-625; 363 NW2d 641 (1984).

**WHEREFORE**, Plaintiff, JUSTIN BOWMAN respectfully request judgment in his favor and against Defendants PRUSH and MICHIGAN STATE UNIVERSITY jointly in an amount in excess of Fifty Hundred Million Dollars ($50,000,000.00), exclusive of costs, interest, and attorney fees.

**COUNT VII – GROSS NEGLIGENCE,
DEFENDANT DAN BOLLMAN**

187.   Plaintiff hereby reincorporates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

188.   At all times relevant hereto, and pursuant to Michigan Law, Defendant, BOLLMAN owed a duty to act with care for the safety of the public while acting as Head of MICHIGAN STATE UNIVERSITY INFRASTRUCTURE PLANNING AND FACILITIES and specifically owed duties to Plaintiff JUSTIN BOWMAN, which duties include, but are not limited to, obeying all laws, statutes and local ordinances in a way that is not grossly negligent.

189.   Defendant, BOLLMAN had actual knowledge of the threats of violence made against MICHIGAN STATE UNIVERSITY and its student body.

190.   Defendant, BOLLMAN had actual knowledge of concerns from staff and students related to security deficiencies at MICHIGAN STATE UNIVERSITY.

191.   Defendant, BOLLMAN chose to disregard the concerns and security deficiencies that existed at Michigan State University that made the campus unsafe for in-person student attendance.

192.   Defendant, BOLLMAN chose to implement a policy at Michigan State University that mandated in-person student attendance and penalized a student's grade if they did not participate in in-person attendance.

193.   Defendant, BOLLMAN chose not to secure the buildings.

194.   Defendant, BOLLMAN chose to put profits over staff and student safety.

195.   Defendant, BOLLMAN chose to create an environment that allowed guns on campus.

196.   Defendant, BOLLMAN chose not to have campus police or security personnel present at instructional buildings.

197.   Defendant, BOLLMAN chose to allow the University to have antiquated security monitoring that did not allow for real-time visualization of campus.

198.   Defendant, BOLLMAN chose not to require ID checks or building access scanning.

199.   At all times relevant hereto, Defendant, BOLLMAN's conduct was so reckless that it demonstrated a substantial lack of concern for whether an injury resulted when he acted as set forth above. Defendant, BOLLMAN's grossly

negligent actions were such that he is not entitled to governmental immunity pursuant to MCL 691.1407(2).

200.   That the above-described conduct of Defendant, BOLLMAN was the proximate cause of Plaintiff, JUSTIN BOWMAN's injuries and damages, including but not limited to the following:

    a.  Fright, shock, and terror;

    b.  Conscious pain and suffering;

    c.  Need for therapy;

    d.  Post-Traumatic Stress Disorder;

    e.  Terrors;

    f.  Disruption of his life;

    g.  Pain and suffering;

    h.  Anxiety;

    i.  Mental anguish;

    j.  Emotional Distress;

    k.  Fright and shock;

    l.  Humiliation and/or mortification;

    m. Past and future reasonable medical and hospital expenses;

    n.  Past and future wage loss and loss of earnings capacity;

    o.  Exemplary damages;

    p.  Any and all compensatory damages, both past and future;

    q.  Other damages, injuries, and consequences that are found to be related to the incident that develops during the course of discovery.

201.   The above actions committed by Defendant, BOLLMAN were committed while acting under the course and scope of his employment with MICHIGAN STATE UNIVERSITY and/or MICHIGAN STATE UNIVERSITY INFRASTRUCTURE PLANNING AND FACILITIES.

202.   The above actions committed by Defendant, BOLLMAN put the students at MICHIGAN STATE UNIVERSITY, and specifically Plaintiff, JUSTIN BOWMAN in greater danger than they were in prior to Defendant's acts.

203.   Defendant, MICHIGAN STATE UNIVERSITY and/or MICHIGAN STATE UNIVERSITY INFRASTRUCTURE PLANNING AND FACILITIES are vicariously liable for the actions of Defendant BOLLMAN in accordance with *Ross v Consumers Power (On Rehearing)*, 420 Mich 567, 621-625; 363 NW2d 641 (1984).

**WHEREFORE**, Plaintiff, JUSTIN BOWMAN respectfully request judgment in his favor and against Defendants, BOLLMAN and MICHIGAN STATE UNIVERSITY jointly in an amount in excess of Fifty Hundred Million Dollars ($50,000,000.00), exclusive of costs, interest, and attorney fees.

## COUNT VIII- INTENTIONAL INFLICTION
## OF EMOTIONAL DISTRESS

204.   Plaintiff hereby reincorporates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

205.   At the time of the above-described incident, as described throughout this Complaint, Defendants acted in an extreme and outrageous manner. Their actions went beyond all bounds of decency.

206.   At the time of the above-described incident, as described throughout this Complaint, Defendants acted in a manner that was so reckless as to demonstrate a substantial lack of concern for whether an injury results.

207.   As described throughout this Complaint, Defendants intentionally and/or recklessly caused Plaintiff, JUSTIN BOWMAN to suffer severe mental and emotional distress and to be severely and permanently injured physically, mentally, and emotionally.

208.   As described throughout this Complaint, Defendants acted maliciously and did not act in good faith, therefore, they are not entitled to governmental immunity pursuant to MCL 691.1407.

209.   As described throughout this Complaint, the actions of all Defendants caused serious emotional injuries resulting in physical manifestations and/or physical consequences as the direct result of defendants' conduct including, but not limited to increased anxiety, headaches, nausea, nightmares, dizziness, loss of appetite, and severe crying spells.

210.   Additionally, and as the direct result of the actions taken by the Defendants as described throughout this Complaint, Plaintiff, JUSTIN BOWMAN suffered serious injuries to his person including, but not limited to:

44

a.  Fright, shock, and terror;

b.  Conscious pain and suffering;

c.  Need for therapy;

d.  Post-Traumatic Stress Disorder;

e.  Terrors;

f.  Disruption of his life;

g.  Pain and suffering;

h.  Anxiety;

i.  Mental anguish;

j.  Emotional Distress;

k.  Fright and shock;

l.  Humiliation and/or mortification;

m. Past and future reasonable medical and hospital expenses;

n.  Past and future wage loss and loss of earnings capacity;

o.  Exemplary damages;

p.  Any and all compensatory damages, both past and future;

q.  Other damages, injuries, and consequences that are found to be related to the incident that develops during the course of discovery.

**WHEREFORE**, Plaintiff, JUSTIN BOWMAN respectfully requests judgment in his favor and against Defendants in an amount in excess of Fifty Hundred Million Dollars ($50,000,000.00), exclusive of costs, interest, and attorney fees.

## COUNT IX- FRAUD AND
## MISREPRESENTATION

211.    Plaintiff hereby reincorporates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

212.    Throughout Plaintiff's admission process to Michigan State University, Plaintiff and his parents met with multiple agents and employees of MICHIGAN STATE UNIVERSITY to discuss their questions and concerns regarding academics, campus housing, campus living, and integration into Michigan State University.

213.    During Plaintiff's meetings with staff and admission representatives, agents and employees of MICHIGAN STATE UNIVERSITY represented to Plaintiff and his family that Michigan State University's campus was a safe, secure campus that strictly prohibited guns on campus and had an active, involved campus police department that was continually monitoring for student safety.

214.    The representations made by agents and employees of MICHIGAN STATE UNIVERSITY to Plaintiff were false when they were made.

215.    The agents and employees of MICHIGAN STATE UNIVERSITY who made these false statements to Plaintiff did so at the direction of MICHIGAN STATE UNIVERSITY.

216.    At the time of Plaintiff's admission, the agents and employees of MICHIGAN STATE UNIVERSITY who made the statements to Plaintiff knew that they were false when they made them.

46

217.  Plaintiff relied on the assertions of agents and employees of MICHIGAN STATE UNIVERSITY when deciding to enroll at Michigan State University.

218.  As a result of his reliance on the false statements of agents and employees of MICHIGAN STATE UNIVERSITY, Plaintiff was subjected to the violent acts of February 13, 2023.

219.  As a direct and proximate result of MICHIGAN STATE UNIVERSITY's fraudulent representations regarding the safety and security of its campus, Plaintiff, JUSTIN BOWMAN suffered serious injuries to his person including, but not limited to:

    a.  Fright, shock, and terror;

    b.  Conscious pain and suffering;

    c.  Need for therapy;

    d.  Post-Traumatic Stress Disorder;

    e.  Terrors;

    f.  Disruption of his life;

    g.  Pain and suffering;

    h.  Anxiety;

    i.  Mental anguish;

    j.  Emotional Distress;

    k.  Fright and shock;

    l.  Humiliation and/or mortification;

m. Past and future reasonable medical and hospital expenses;

n. Past and future wage loss and loss of earnings capacity;

o. Exemplary damages;

p. Any and all compensatory damages, both past and future;

q. Treble damages;

r. Other damages, injuries, and consequences that are found to be related to the incident that develops during the course of discovery.

**WHEREFORE**, Plaintiff, JUSTIN BOWMAN respectfully requests judgment in his favor and against Defendants in an amount in excess of Fifty Hundred Million Dollars ($50,000,000.00), exclusive of costs, interest, and attorney fees.

## COUNT X- ELLIOT-LARSON CIVIL RIGHTS ACT

220.    Plaintiff hereby reincorporates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

221. Defendant, MICHIGAN STATE UNIVERSITY is an educational institution that is prohibited from engaging in discriminatory conduct pursuant to Michigan's Elliot Larsen Civil Rights Act, specifically MCL 37.2401, et seq.

222.    Defendants, WOODRUFF, LYNCH, PRUSH, and BOLLMAN were at all times relevant agents of MICHIGAN STATE UNIVERSITY and prohibited from engaging in discriminatory conduct pursuant to Michigan's Elliot Larsen Civil Rights Act, specifically MCL 37.2401, et seq.

223.  As described throughout this Complaint, Defendants, MICHIGAN STATE UNIVERSITY, WOODRUFF, LYNCH, PRUSH, and BOLLMAN engaged in conduct that violated the Elliot-Larson Civil Rights Act when they enacted policies and procedures that adversely impacted the educational rights of the young students who were housed on Michigan State University's campus.

224.  As a direct and or the direct proximate cause of the actions of Defendants, MICHIGAN STATE UNIVERSITY, WOODRUFF, LYNCH, PRUSH, and BOLLMAN, Plaintiff, JUSTIN BOWMAN suffered the following damages:

     a.  Fright, shock, and terror;

     b.  Conscious pain and suffering;

     c.  Need for therapy;

     d.  Post-Traumatic Stress Disorder;

     e.  Terrors;

     f.  Disruption of his life;

     g.  Pain and suffering;

     h.  Anxiety;

     i.  Mental anguish;

     j.  Emotional Distress;

     k.  Fright and shock;

     l.  Humiliation and/or mortification;

     m. Past and future reasonable medical and hospital expenses;

     n.  Past and future wage loss and loss of earnings capacity;

o. Exemplary damages;

p. Any and all compensatory damages, both past and future;

q. Attorney fees;

r. Other damages, injuries, and consequences that are found to be related to the incident that develops during the course of discovery.

**WHEREFORE**, Plaintiff, JUSTIN BOWMAN respectfully requests judgment in his favor and against Defendants in an amount in excess of Fifty Hundred Million Dollars ($50,000,000.00), exclusive of costs, interest, and attorney fees.

Respectfully Submitted,

CHRISTENSEN LAW

BY:    /s/NORA Y. HANNA
        NORA Y. HANNA (P80067)
        DAVID E. CHRISTENSEN (P45374)
        Attorneys for Plaintiffs
        25925 Telegraph Road, Suite 200
        Southfield, MI  48033
        (248) 213-4900/Fax (248) 213-4901
        nhanna@davidchristenlaw.com

Date: February 12, 2025